## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 23-66** |
| **MELISSA J. WATSON** | **SECTION: "P" (5)** |

## ORDER AND REASONS

Before the Court are the Government's two Applications for Writs of Garnishment seeking money or property that may be in the possession of Pelican State Credit Union and Gulf Coast Bank and Trust Company,[1] the response of Defendant, Melissa J. Watson, to the two applications,[2] and the Government's reply in support of its applications.[3]  For the reasons that follow, **IT IS ORDERED** that the Government's applications are **DENIED**.

## I.       BACKGROUND

On April 9, 2024, Melissa J. Watson pled guilty to one count of Theft of Public Money.[4] On July 23, 2024, Watson was sentenced to 12 months and one day of incarceration and a supervised release period of three years.[5]  Watson was also ordered to pay a special assessment of $100 and, pursuant to Watson's plea agreement,[6] restitution in the amount of $1,281,818: $781,818 owed to the United States Department of Health and Human Services and $500,000 owed to the Small Business Administration.[7]

Under the "Schedule of Payments" section of the Judgment, two boxes are checked:

- ▪ "B: Payment to begin immediately (may be combined with C, D, or F, below);" and

---

[1] R. Docs. 63 & 64.
[2] R. Doc. 67.
[3] R. Doc. 68.
[4] R. Doc. 54 at 1.
[5] *Id.* at 2-3.
[6] R. Doc. 39.
[7] R. Doc. 54 at 6.

- "F: Special instructions regarding the payment of criminal monetary penalties[.]"[8]

Below "F," the Judgment provides that "THE SPECIAL ASSESSMENT IS DUE IMMEDIATELY."[9] But just below that, the Judgment states, "Restitution shall be paid in monthly installments of $1,500.00. The first installment shall be paid within 60 days of this judgment. The payment is subject to increase or decrease, depending on the defendant's ability to pay."[10]

This Court issued an Order on October 28, 2024, amending Watson's restitution payment schedule to require Watson to begin making restitution payments "within 90 days of the end of [her] period of incarceration, at a rate of $1,500 per month,"[11] and ordering the parties to brief the issue considered here—whether the proposed writs of garnishment are appropriate considering the facts of this case, the language of the Court's July 23, 2024 Judgment, and the applicable law.[12]

## II.    LAW AND ANALYSIS

The Mandatory Victims Restitution Act ("MVRA") requires courts to order restitution for victims of certain offenses in conjunction with the sentence imposed on the defendant for those offenses.[13] In those instances, restitution is mandatory and must be ordered in the amount of the loss to the victim.[14] While orders of restitution must be made without regard to the defendant's economic circumstances, defendants are instructed to notify the court if their ability to pay restitution is affected by a material change in their economic circumstances.[15]

---

[8] *Id.* at 7.
[9] *Id.*
[10] *Id.*
[11] R. Doc. 66 at 4.
[12] *Id.* at 3-4.
[13] *See* 18 U.S.C. § 3664; *see also* R. Doc. 39 ("It is also understood that the restitution provisions of Sections 3663 3663A of Title 18, United States Code, will apply. The defendant acknowledges that a total amount of restitution owed is $1,281,818. The defendant agrees that any restitution imposed will be non-dischargeable in any bankruptcy proceeding and that defendant will not seek or cause to be sought a discharge or a finding of dischargeability as to the restitution obligation. The defendant further acknowledges and understands that, notwithstanding any payment schedule imposed at sentencing or during probation or supervised release, restitution is due and payable in full immediately upon entry of the judgment of conviction.").
[14] *See United States v. Taylor*, 582 F.3d 558, 567 (5th Cir. 2009).
[15] 18 U.S.C. § 3664(k).

18 U.S.C. § 3572 provides that "[a] person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments. If the court provides for payment in installments, the installments shall be in equal monthly payments over the period provided by the court, unless the court establishes another schedule."  It is the duty of the court, not the government, to determine how a defendant must pay restitution.[16]  "When a restitution order specifies an installment plan, unless there is language directing that the funds are also immediately due, the government cannot attempt to enforce the judgment beyond its plain terms absent a modification of the restitution order or default on the payment plan."[17]

In *United States v. Rand*, the Fifth Circuit reviewed a judgment ordering restitution payments to commence 60 days after Rand's release from prison at a rate of $50 per month, or 10% of his gross salary, whichever was greater.[18]  As the court noted, "fines, restitution, and other monetary penalties are due immediately under 18 U.S.C. § 3572(d)(1)," unless "'in the interest of justice, the court provides for payment on a date certain or in installments.'"[19]  Finding that the district court had merely postponed Rand's restitution without expressly "deferring payments 'in the interest of justice,'" or "specify[ing] that the government could not pursue the debt earlier should circumstances change," the Fifth Circuit determined that "Rand remained subject to the default presumption that his restitution would be due as he acquired the means to pay it."[20]  Finally, the court noted that "the district court 'may, on its own motion, or the motion of any party,

---

[16] *United States v. Hughes*, 914 F.3d 947, 949 (5th Cir. 2019); *see also* 18 U.S.C. § 3664(f)(2) ("Upon determination of the amount of restitution owed to each victim, the court shall . . . specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid . . . .").

[17] *Id.* at 949 (citing 18 U.S.C. § 3572(d)(1) and *United States v. Martinez*, 812 F.3d 1200, 1205 (10th Cir. 2015).

[18] *United States v. Rand*, 924 F.3d 140, 142 (5th Cir. 2019).

[19] *Id.* at 143 (quoting 18 U.S.C. § 3572(d)(1)).

[20] *Id.* at 143 (quoting 18 U.S.C. § 3572(d)(1)).

including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require.'"[21]

In *United States v. Hughes*, decided a few months before *Rand*, the Fifth Circuit reviewed a judgment ordering immediate payment of $100 out of $189,933.31 (plus interest) in restitution owed by the defendant.[22]  As to the remaining restitution owed, the judgment required payments of "the greater of $25 per quarter or 50% of any wages earned" during Hughes's incarceration, and, as to any balance that remained after Hughes's release, ordered Hughes to pay equal monthly installments of $500 beginning 60 days after his release.[23]  During Hughes's incarceration, the government discovered that he had accrued $3,464.85 in his inmate trust account and sought turnover of those funds to be applied to his restitution balance.[24]  Persuaded by the Tenth Circuit's analysis in *United States v. Martinez*,[25] the Fifth Circuit determined that the judgment did not make Hughes's restitution due immediately and that, absent default or a modification of the restitution plan, the government was powerless to enforce restitution payments beyond the terms of the judgment.[26]

The *Hughes* court also addressed two prior Fifth Circuit rulings upon which the Government now relies: *United States v. Ekong*[27] and *United States v. Diehl*.[28]  As the *Hughes* court explained, the payment schedule in *Ekong* was conditional and only triggered if "a balance remained when the defendant began her term of supervised release."[29]  Because the payment

---

[21] *Id.* at 143 (quoting 18 U.S.C. § 3664(k)).
[22] *Hughes*, 914 F.3d at 948.
[23] *Id.*
[24] *Id.* at 949.
[25] 812 F.3d 1200 (10th Cir. 2015).
[26] *Hughes*, 914 F.3d at 949-50.
[27] 518 F.3d 285 (5th Cir. 2007) (per curiam).
[28] 848 F.3d 629 (5th Cir. 2017).
[29] *Hughes*, 914 F.3d at 950 (citing *Martinez*, 812 F.3d at 1207); *see also Martinez*, 812 F.3d at 1207 ("If upon commencement of the term of supervised release any part of the restitution remains unpaid, the defendant shall make payments on such unpaid balance beginning 60 days after the release from custody at the rate of $500 per month until

schedule was never triggered, the full restitution amount was immediately collectible.[30]  And in *Diehl*, the judgment simply did not specify a payment schedule; instead, "it provided that '[i]f the defendant is unable to pay this indebtedness at this time, the defendant shall cooperate with the [government] to make payment in full as so[o]n as possible, including during any period of incarceration.'"[31]

At least one other court has observed that the *Rand* and *Hughes* decisions are arguably contradictory. [32]  While the *Hughes* court found that a mandatory, non-conditional installment payment schedule was sufficient to rebut garnishment, the *Rand* court suggested that a district court must expressly state in its judgment that the installment plan was ordered "in the interest of justice" or that "the government could not pursue the debt earlier should circumstances change."[33]

This Court does not need to resolve this apparent inconsistency in Fifth Circuit precedent. Though the Judgment in this case contains a clause providing that payments are to begin immediately, the most natural reading of the entire Schedule of Payments, consistent with the Court's intentions when it signed the Judgment, is that only the special assessment was due immediately, while restitution was subject to an installment plan.[34]  While the Court retains the ability to adjust the payment schedule or enforce immediate payment in full as the interests of justice require, [35] the Court ordered the installment plan in light of the significant property subject

---

the restitution is paid in full.") (quoting Judgement in a Criminal Case at 6, *United States v. Ekong*, No. 3:04-CR-030-M (N.D. Tex. Sept. 10, 2004), ECF No. 74).

[30] *Id.*

[31] *Id.* (quoting *Diehl*, 848 F.3d at 630).

[32] *United States v. Deshetler*, No. 17-73, 2023 WL 8628917, at *2 (E.D. Tex. Nov. 6, 2023) ("In addressing this issue, the Fifth Circuit has reached contradictory conclusions.") (comparing *Hughes*, 914 F.3d at 949, with *Rand*, 924 F.3d at 142, and *Ekong*, 518 F.3d at 286), *report and recommendation adopted*, No. 17-73, 2023 WL 8622965 (Dec. 12, 2023).

[33] *Rand*, 924 F.3d at 143.

[34] *See* R. Doc. 54 at 7.

[35] 18 U.S.C. § 3664(k).

to forfeiture and Watson's resulting financial condition.[36]  Granting the Government's applications for writs of garnishment at this stage would, therefore, "usurp the district court's role in evaluating the defendant's financial conditions and setting the payment schedule."[37]

## III.    CONCLUSION

For the foregoing reasons, the Government's applications[38] are **DENIED**.

New Orleans, Louisiana, this 19th day of February 2025.

_____
**DARREL JAMES PAPILLION**
**UNITED STATES DISTRICT JUDGE**

---

[36] *See* R. Doc. 54 at 7 (ordering forfeiture "consistent with the Indictment and Plea Agreement"); *see also* R. Doc. 39 at 4 (memorializing Watson's agreement to forfeit (or not contest the forfeiture of) various property, including approximately $540,000 in cashier's checks).
[37] *Martinez*, 812 F.3d at 1206 (citing *United States v. Prouty*, 303 F.3d 1249, 1254-55 (11th Cir. 2002)).
[38] R. Docs. 63 & 64.